**STATE OF VERMONT**

| | |
|---|---|
| **SUPERIOR COURT** | **ENVIRONMENTAL DIVISION** |
| | **Docket No. 43-3-19 Vtec** |

| | |
|---|---|
| **SECRETARY, VERMONT** | ) |
| **AGENCY OF NATURAL RESOURCES,** | ) |
|     **Plaintiff,** | ) |
| | ) |
|     **v.** | ) |
| | ) |
| **RONNIE M. WELLS,** | ) |
|     **Respondent.** | ) |

## DECISION ON THE MERITS

This environmental enforcement proceeding was heard before the Vermont Superior Court, Environmental Division on January 25, 2021, Thomas S. Durkin, Environmental Judge presiding. Upon the close of evidence from all parties,[1] the Court conducted preliminary deliberations and thereafter made the initial factual and legal determination that the violations alleged by the Vermont Agency of Natural Resources ("ANR") had been committed.

The Court thereafter instructed counsel for ANR to submit a post-trial memorandum concerning its requests for relief and allowed Respondent to submit its own memorandum, respond to ANR's post-trial filings, and present a new site restoration plan for the Court to take into consideration when fashioning its relief. The Court received only a post-trial memorandum from ANR.

After that filing was received by the Court and the time to respond expired, this matter came under advisement on March 17, 2021, and the Court thereafter began its deliberations, research, and drafting of this Merits Decision. The Court was interrupted in completing its research and drafting of this Decision by additional responsibilities and offers its apologies to the parties for the delays in issuing this Decision.

---

[1] At the close of evidence, Respondent requested permission to submit written testimony from his trucking contractor to substantiate his claim that his site preparation work had been properly performed. The Court granted this request. However, Respondent failed to file written testimony after trial from any third-party witness.

This Decision is intended to address all claims and defenses offered by the parties in the merits hearing.

Based upon the credible evidence and legal arguments presented at the merits hearing, the Court renders the following Findings of Fact and Conclusions of Law, together with the Judgment Order which accompanies this Merits Decision.

## I. *Introduction and Procedural Background*

The Secretary of the Agency of Natural Resources ("the Secretary") issued an Administrative Order ("the Order") on October 12, 2018, that it served upon Respondent. The Order alleged a violation of the Vermont Wetland Rules ("VWR"), Section 9, which prohibits work in a Class II wetland and/or its 50-foot buffer zone without a State Wetlands Permit. Specifically, the Order alleged that Respondent, on one or more occasions, placed a large amount of fill in a Class II wetland without first obtaining a State Wetlands Permit. After having been served with the Order, Respondent timely requested a hearing, which the Court conducted via remote video conference on January 25, 2021.[2] At the close of evidence, the Court allowed the parties to file post-trial memoranda.

## II. *Findings of Fact*

1. Respondent owns property located at 143-145 Cobble Hill Road in Milton, Vermont ("the Property").

2. The Property contains a wetland that is mapped on the Vermont Significant Wetland Inventory (VSWI) Map and is classified as a Class II Wetland under the VWR. A Class II Wetland mapped on the VSWI map also exists adjacent to the property's northern boundary line at Cobble Hill Road.

3. On September 15, 2017, ANR Regional Wetland Ecologist Tina Heath and Environmental Compliance Division Environmental Enforcement Officer Ted Cantwell conducted a site visit at the Property.

4. During this site visit, Ms. Heath observed saturation in the soils, hydric soils with a depleted matrix, and a dominance of wetland plant species on the Property. Based on her visual observations and subsequent soil analysis, Ms. Heath confirmed the Property contained further

---

[2] Pursuant to Vermont Supreme Court Administrative Order 49 and its amendments, trial courts are directed during the COVID 19 pandemic to conduct all non-emergency hearings vis remote video conference.

wetlands in addition to the mapped Class II wetland. As a wetland contiguous to one or both of the mapped Class II wetlands identified on the VSWI Map, she determined this was a jurisdictional Class II wetland (hereinafter referred to as "the contiguous Class II wetland.").

5. While on-site, Ms. Heath also observed a significant amount of earthen fill had been placed in the contiguous Class II wetland on the Property.

6. Respondent did not have a permit to place fill in the contiguous Class II wetland on the Property. By placing fill in a Class II wetland without a permit, Ms. Heath determined that the Respondent violated VWR, Section 9.

7. After receiving ANR's Order, Respondent retained engineer Arthur Gilman, from Gilman & Briggs Environmental. On May 29, 2019, Mr. Gilman inspected the soil depths at the Property by digging eight different pits through the fill material to the original soil level, which was determined by the change in texture and by the dead plant material beneath the fill. Mr. Gilman determined the depth of the fill to be approximately four (4) feet deep across the site. On the same visit, Mr. Gilman preliminarily mapped the boundaries of the jurisdictional Class II wetland. See Agency Exhibit E.

8. On February 13, 2020, Mr. Gilman submitted to ANR a Wetland Restoration Plan ("the Plan") to address "the remediation of unauthorized fill of a wetland at 143 Cobble Hill Road, Milton from 2015 – 2018", a copy of which was admitted into evidence at trial as ANR Exhibit G. The Plan identified the VSWI map polygons of Class II wetlands, the jurisdictional wetland delineation on the Property as determined by field inspection, the maximum limit of fill, and an area from which Mr. Wells had started to remove fill. See Agency Exhibit G at Figure 1.

9. The Plan also included a map dated October 19, 2018, identifying an area of fill, approximately 0.72 acres in size, that Respondent proposed to retain in the wetland and buffer zone. See Id. at Figure 2.

10. While ANR officials agreed with Mr. Gilman's wetland delineation, as depicted in Figure 1, ANR officials declined to approve the Plan. Ms. Heath determined that Respondent's placement of the fill in the wetland and its buffer had adversely impacted the functions and values of the wetland and buffer zone. Specifically, the fill has adversely impacted the ability of the wetland to provide for flood storage, groundwater and surface water protections, resources important to aquatic life, and erosion control. Testimony of Tina Heath.

11. On June 26, 2020, Ms. Heath met with Respondent and Mr. Gilman at the Property. Ms. Heath observed that Respondent had removed a portion of the fill from the wetland. However, in the area where Respondent had conducted the removal, Ms. Heath observed that approximately six (6) to twelve (12) inches of fill remained as well as the presence of upland vegetation growth. It is Ms. Heath's opinion that this remaining fill is inhibiting and will continue to inhibit restoration of the wetland. Ms. Heath further observed that a significant amount of the original fill that Respondent caused to be deposited remained at its original depth in the wetland. Testimony of Tina Heath; ANR Exhibit J.

12. While on-site, Ms. Heath also observed that Respondent had relocated the ditch on the west side of the Property northward and widened the southern end of the ditch along Wells Road, as depicted in Agency Exhibit I-4. The spoils from the ditch work were used to create an accessway across the wetland. Testimony of Tina Heath; ANR Exhibit J. The Respondent did not have a permit to conduct these activities in the Class II wetland located on the Property. Testimony of Tina Heath; Testimony of Arthur Gilman. By conducting additional unpermitted activities in a Class II wetland, the Respondent violated VWR, Section 9.

13. On July 9, 2020, Ms. Heath prepared a trip report documenting her observations from the June 26, 2020, site visit, which were conveyed to the Respondent and Mr. Gilman. See ANR Exhibit J.

14. Mr. Gilman prepared a Memorandum, dated August 3, 2020, in response to Ms. Heath's trip report. In the Memorandum, Mr. Gilman indicates that he has reviewed Ms. Heath's report and states "the observations in that memo are accurate," see ANR Exhibit K, although Mr. Gilman did suggest waiting to see whether the "restored" portion of the original fill area would return to a functional wetland once the abnormally dry conditions then prevalent ceased. Id.

15. On August 7, 2020, Ms. Heath provided a response to Mr. Gilman's August 3, 2020, Memorandum, including specific compliance directives to address the wetland violations on the Respondent's Property. See ANR Exhibit L. Specifically, the Respondent was directed to "[r]emove all fill within the Class II wetland and associated 50-foot buffer zone," including, "6-12 [inches] of fill…from the 'restored' portion of the property, as well as the remaining 4-6 [feet] of fill (~1,000 truckloads) that currently remains in the wetland and buffer zone." Id.

16. Restoration of the wetland and buffer zone's original hydrology and vegetation of the wetland is required. The original grade and drainage of the site needs to be restored, along with

adding appropriate topsoil, then seeding and mulching with a wetland seed mix to restore the wetland and buffer zone's vegetation. See ANR Exhibit L.

17. To date, the Respondent has not complied with these compliance directives. Testimony of Tina Heath.

### III. *Conclusions of Law*

Based upon the credible facts presented, as recited above, none of which was contested by credible evidence at trial, the Court concludes that by a preponderance of the evidence, Respondent violated VWR, Section 9 by placing fill and conducting other activities in a Class II wetland, identified pursuant to VWR, Section 4.6, and/or the 50-foot buffer zone of a Class II wetland without a State Wetlands Permit.

### IV. *Penalty*

In accordance with 10 V.S.A. §8010(b), the Court considered the following factors in determining the appropriate amount of the penalty to be assessed against Respondent and in ANR's favor: (1) actual or potential harm to human health and the environment; (2) the presence of mitigating circumstances; (3) whether the respondent knew or had reason to know the violation existed; (2) record of compliance; (4) economic benefit gained from the violation; (5) deterrent effect of the penalty; (6) actual cost of enforcement; and (7) the length of time the violation has existed. When ANR has ordered a penalty amount, the Court must review and determine anew the amount of penalty for the violations using these same criteria. 10 V.S.A. §8012(b)(4). In the October 12, 2018, Administrative Order that the Secretary had served on Respondent, the Secretary directed that Respondent pay a penalty of $29,750.00. In her Proposed Findings of Fact and Conclusions of Law, filed with the Court on February 26, 2021, the Sectary recommended that the Court impose that same amount of penalties against Respondent, together with reimbursement of the $2,532.00 in costs that ANR presented at trial, for a total of $32,282.00.

The Court considered the following facts and circumstances in determining the penalty for the Respondent's violation of VWR, Section 9: Prohibited activity in a Class II wetland and/or 50-foot buffer zone without a State Wetlands Permit:

1. ***The degree of actual or potential impact on public health, safety, welfare, and on the environment, 10 V.S.A. §8010(b)(1)***

The Court agrees with ANR that Respondent's activities presented an only minor potential impact to public health, safety, welfare, but did present a moderate actual impact and a major potential impact to the environment.

The potential impact to public health, safety, and welfare, though minor, is due to the large amount of fill placed directly in the wetland and buffer areas. The subject wetland is adjacent to a tributary of Mallets Creek and ultimately flows to Lake Champlain. The placement of fill in the wetland contributes to degraded water quality in these waterways that can potentially create health issues and prevent people from recreating.

The moderate actual and major potential impacts to the environment are due to the large amount of fill that was unlawfully placed in the regulated wetlands and their fifty-foot buffers, thereby contributing to a direct loss of wetland habitat and wetland function, resulting in adverse impacts to downstream waters. This wetland has lost most of its ability to store floodwaters and surface runoff. It can no longer contribute to the protection of water quality as it once did before Respondent's unlawful acts, due to the inability to filter out nutrients and pollutants or prevent erosion because of significant vegetation loss. The impacted wetland can no longer contribute cool water discharge and other resources to waters downstream that support fish.

Given the major potential impact of the Respondent's activities on the environment, as well as the moderate actual impact on the environment, the Court concludes ANR's requested penalty amount is supported by the facts presented.

2. ***Mitigating Circumstances, 10 V.S.A. §8010(b)(2)***

Respondent has been occasionally responsive to ANR's requests and demands that he address his violations to the wetlands. He has attempted to remove some of the fill that he placed in the wetlands, although his removal efforts were limited to only a portion of the affected areas and, even where he did remove the unlawfully placed fill, his removal efforts were only partial, thereby leaving a considerable amount of fill in the wetland areas. ANR officials reasonably estimated that the remaining fill equates to at least 1,000 truckloads of fill.

The Secretary acknowledged that it had caused a considerable delay in its efforts at seeking enforcement against Respondent and included what it called a 10% reduction to the requested penalty. ANR represents in its Proposed Findings and Conclusions such a reduction in the

requested penalty would equate to $4,250.00. The Court does not follow ANR's mathematical calculation of this 10% reduction.

While the Court appreciates ANR's acknowledgement of its enforcement delays, we conclude that the circumstances warrant a greater reduction. As noted below, given Respondent's limited resources and the costs of bringing the site into full compliance, we conclude that a 15% reduction in the requested penalty (which would equate to $4,462.50), together with a further conditional reduction (should Respondent bring the site into full compliance by a date certain) is warranted.

### 3. Whether Respondent knew or had reason to know the violation existed, 10 V.S.A. §8010(b)(3)

Respondent testified that he contracted to receive the fill that he unlawfully deposited into the wetlands and buffers from a UVM Medical Center construction project. Specifically, Respondent testified that "I was getting paid to haul it up here. I'd never been able to accumulate that much fill in my lifetime, it is only me." Respondent testified that he brought approximately 1,000 yards of fill to the Property. Respondent testified that he placed the fill to "get it to be a usable piece of property and I don't want a swamp in there that is not necessary. I put the ditch in. I did all the work." Testimony of Ronnie Wells.

Based on this further testimony presented at the hearing, the Respondent knew the violation existed and the Property contained a wetland. Respondent's actions constituted a knowing violation of VWR and was completed for his personal benefit.

Additionally, since the filing of the Agency's October 12, 2018, Order, Respondent has conducted additional activities in the Class II wetland and 50-foot buffer zone on the Property without a State Wetlands Permit. Testimony of Tina Heath; Arthur Gilman; Ronnie Wells.

Based on this testimony presented at the hearing, the Respondent knew the violation existed and continued activities in the Class II wetland and/or 50-foot buffer zone without a State Wetlands Permit.

### 4. Record of compliance, 10 V.S.A. §8010(b)(4)

The Secretary did not provide evidence of Respondent's record of compliance or prior violations.

### 5. *Economic Benefit gained from the violation, 10 V.S.A. §8010(b)(5)*

The Secretary did not provide evidence of the specific economic benefit to Respondent that flowed from these unlawful filling activities.

### 6. *Deterrent effect of the penalty, 10 V.S.A. §8010(b)(6)*

The Court agrees with ANR that some penalty is necessary to deter Respondent and the regulated community from committing similar violations in the future.

Respondent was initially uncooperative in response to ANR's directives to cease all filling activities in the Class II wetland and retain a qualified wetland consultant to prepare and submit a Wetland Remediation Plan for the removal of all fill in the wetland and its 50-foot buffer zone. It was not until after the Agency's Order was issued in 2018 that the Respondent retained Mr. Gilman and subsequently removed a portion of the fill. ANR's efforts to compel Respondent to voluntarily take appropriate action were unsuccessful.

A penalty is necessary to deter Respondent from committing similar actions in the future, given that ANR was required to bring this matter before the Court for a merits hearing to compel Respondent to comply with the directives conveyed in the ANR Order dated October 12, 2018. A penalty is also necessary to deter the regulated community from committing similar violations.

### *Cost of enforcement, 10 V.S.A. §8010(b)(7)*

The Secretary credibly presented evidence of the costs it incurred in responding to Respondents unlawful wetlands actions. Those costs are identified as follows:

Environmental Enforcement Officer David Murrish spent a total of approximately 30 hours in connection with attending site visits, performing administrative activities, preparing for the merits hearing, and testifying at the merits hearing. His hourly salary is $24.26. His costs therefore total approximately $727.80.

Ms. Heath spent a total of approximately 60 hours in connection with attending site visits, performing administrative activities, preparing for the merits hearing, and testifying at the merits hearing. Her hourly salary is $30.07. Her costs therefore total approximately $1,804.20.

Based on the testimony, NR's costs of enforcement in this matter totaled at least $2,532.00.

### 7. *Length of time the violation has existed, 10 V.S.A. §8010(b)(8)*

Based on the testimony and exhibits presented at the hearing, the Respondent placed fill in the Class II wetland and/or 50-foot buffer zone located on the Property from 2015 through 2018. See Plaintiff's Exhibit G. The Agency acknowledges that the Respondent has removed a portion of

the fill from the wetland and/or 50-foot buffer zone, yet a significant volume of fill remains in the wetland. Additionally, since the filing of the Agency's October 12, 2018, Order, the Respondent has conducted additional activities in the Class II wetland and/or 50-foot buffer zone on the Property without a State Wetlands Permit. Testimony of Tina Heath; Arthur Gilman; Ronnie Wells. As such, the Secretary submits the duration of the violations has been lengthy and continuous.

## V. *Compliance Directives*

Based upon the credible evidence presented, nearly all of which Respondent did not contest, the Court hereby issues an Order directing Respondent to complete the following specific remedial measures:

A. Immediately cease all filling activities in the Class II wetland and surrounding 50-foot buffer that are located on the Property.

B. No later than thirty (30) consecutive calendar days following the effective date of this Order, hire a qualified wetland consultant to prepare a wetland remediation plan for the Property.

C. No later than sixty (60) consecutive calendar days following the effective date of this Order, have its wetland consultant submit to ANR, for review and approval, a Wetland Remediation Plan (the Plan). The Plan shall include, but is not limited to:

  1. A map identifying the limits of the disturbances to the wetland and 50-foot buffer zone;

  2. A determination of the fill depth in the wetland and its 50-foot buffer zone;

  3. A plan for removal of all fill from the wetland and its 50-foot buffer zone;

  4. A planting plan for restoring the wetland and its 50-foot buffer zone; and

  5. A plan for final stabilization of the wetland and its 50-foot buffer zone.

D. Within thirty (30) consecutive calendar days of receipt of the Plan, ANR must respond with approval or specific required changes. If it does not so respond within 30 days, the Plan will be deemed approved.

E. No later than one hundred and eighty (180) consecutive calendar days following the effective date of this Order, the Respondent shall remove all fill from the wetland and its 50-foot buffer zone, restore it to the historic topography, and stabilize the site in accordance with the approved Plan.

F. No later than three hundred and sixty (360) consecutive calendar days following the effective date of this Order, the Respondent shall complete vegetation restoration measures in accordance with the approved Plan and have ANR conduct a site inspection.

The Court concludes that, based on the testimony and exhibits presented at the merits hearing, that Respondent is fully capable of implementing the above compliance directives, which are essential to restoring the impacted wetland on the Property. Respondent owns the equipment needed to remove the fill, the trucks to transport the fill, and a location less than a mile away suitable to relocate the fill. In fact, Respondent has already removed a portion of the fill from the wetland utilizing those very assets. According to Respondent, he removed at least a third of the total amount of fill placed in the wetland. Respondent testified that he began the partial removal in June 2020 and was done by August 2020. Testimony of Ronnie Wells; Testimony of Arthur Gilman. Based on the testimony presented at the hearing, the Court concludes that Respondent has demonstrated the ability to achieve the compliance directives, but he has been unwilling to fully do so.

## VI. *Conclusion*

The Court concludes that, based on the evidence presented at the merits hearing, Respondent violated VWR, Section 9 by placing fill and conducting other activities in a Class II wetland and/or 50-foot buffer zone without a State Wetlands Permit, all in violation of the Vermont Wetland Rules. As a consequence, Respondent is hereby **ORDERED** to remove all the fill from the impacted wetland, restore the wetland to its original state, and comply with all the compliance directives and deadlines listed above. The Court hereby imposes a penalty of $25,287.50, together with reimbursement of incurred costs presented at trial of $2,532.00, for a total of **$27,819.50**, due and payable by November 1, 2022, provided however, should Respondent complete all work directed by this order, and otherwise pay the penalty directed here by November 1, 2022, Respondent shall be entitled to a partial credit of $7,000.00 against the penalty sum.

Electronically signed on November 24, 2021, at Newfane, VT pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division